## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

JANE PARKER-AMBROSE,

      Plaintiff,

    v.                                 No. 1:15-CV-00650 WJ/SCY

GEORGE A. ORTEGA, III, in his
Individual capacity,

      Defendant.


## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
## and
## DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon these cross-motions for summary judgment:

(1) Plaintiff's Motion for Summary Judgment, filed on February 16, 2018 **(Doc. 87)**; and

(2) Defendant's Motion for Summary Judgment Based on Qualified Immunity, also filed on February 16, 2018 **(Doc. 91)**.

Having reviewed the parties' pleadings and the applicable law, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

## BACKGROUND

Plaintiff alleges that Defendant violated her Fourth Amendment rights when he arrested her in December 2013 for the crime of aggravated driving while intoxicated and speeding. Plaintiff claims that Defendant Ortega, employed by the Bernalillo Police

Department in Bernalillo, New Mexico asked her to perform standardized field sobriety tests that he knew were unreliable for subjects who were her age, and gave her improper instructions on how to perform the test. Plaintiff also claims that she agreed to take the portable breath test after Defendant threatened to criminally charge Plaintiff if she refused, but because she was not able to blow air with enough force to register a result on the machine, Defendant Ortega placed her under arrest. After spending several hours in jail, the criminal case filed against Plaintiff was dismissed by the state because Defendant did not appear for the trial, which (according to Defendant) was due to mis-calendaring. Defendant Ortega contends that he had probable cause to arrest Plaintiff, and denied threatening or coercing her to take the portable breathalyzer test.

Limited discovery was allowed in this case related to the defense of qualified immunity, pursuant to Rule 56(d). *See* Doc. 38.

## I. Facts

In order to streamline the narrative for these cross-motions for summary judgment, the Court sets out the facts presented by both parties. These facts are undisputed unless otherwise noted. The Court also omits references to supporting exhibits except where necessary, as well as "facts" which are more accurately described as subjective beliefs or legal conclusions, *see e.g.,* Deft's Facts 20 and 26 (stating that Defendant reasonably believed that Plaintiff displayed signs of impairment and that Defendant reasonably believed he had probable cause to arrest Plaintiff). Both parties submitted video recordings of the stop and arrest, *see* Docs. 35 and 90, which the Court has reviewed carefully. The video exhibits support many of the facts submitted by the parties, and are

worth (as the saying goes) a thousand words in the resolution of factual disputes.[1] *See*

*Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different

stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on

a motion for summary judgment.").

A.    <u>Initial Stop</u>

On or about December 29, 2013, while monitoring traffic atop the bridge on US

550, Sgt. Joseph Schake, utilizing a Custom Signals laser, registered Plaintiff traveling at

the speed of 81miles per hour in a construction zone with a posted speed limit of 55 miles

per hour.  Based upon his observations, Sgt. Schake radioed Officer Ortega ("Defendant"

or "Defendant Ortega"), provided him information pertaining to Plaintiff's speeding, and

provided a description of the vehicle Plaintiff was driving, which Plaintiff had rented to

travel from Denver, Colorado to San Diego, California.  On the way, she had stopped in

Pueblo, Colorado, and then in Santa Fe and was on her way to Albuquerque when she was

stopped by Officer Ortega.  Defendant informed Plaintiff that he stopped her for speeding.

Plaintiff does not contest that she was speeding at the time. Officer Ortega claims that

when Plaintiff spoke, he detected an odor of alcohol emitting from Plaintiff's breath, but

Plaintiff disputes that she smelled of any alcohol. Plaintiff explained to Officer Ortega that

she was headed to Albuquerque and when asked whether she had had anything alcoholic

to drink along the way, Plaintiff said "No."

---

[1] The parties submitted the same video of the stop and arrest, so the Court will refer only to "Ex. 5" in the discussion and analysis. Also, Video 2 of Exhibit 5 does not factor into the analysis here, since it shows only events subsequent to her arrest.

Parties dispute whether Officer Ortega actually asked Plaintiff for her driver's license or whether Plaintiff just handed it to him on her own, knowing he would want it. *See* Doc. 95 at 11. The video shows Officer Ortega asking for the rental agreement, which she found relatively quickly and gave it to him.[2]

B.    Detention

Defendant Ortega then asked the Plaintiff to exit to the rear of her vehicle.

(1) *Standard Field Sobriety Tests Administered*

The criteria for conducting DWI investigations are drawn from the National Highway Traffic Safety Administration ("NHTSA") DWI Detection and Standardized Field Sobriety Testing Manual. Plaintiff claims that the Standard Field Sobriety Tests ("SFST") set forth in the NHTSA Manual are for individuals under the age of 65, not overweight and in reasonable health. However, Defendant claims that the administration of the SFST to people over 65 is not a material fact for purposes of Plaintiff's motion because Plaintiff was 64 years old at the time of her arrest by Officer Ortega. Defendant further points out that Plaintiff claimed she could not perform two of the tests because she had a disability, yet told Defendant that she was not disabled. The Court agrees with Defendant that Plaintiff's age with respect to the administration of field sobriety tests is not material for purposes of this motion.

Officer Ortega proceeded to perform the Horizontal Gaze Nystagmus ("HGN") test, one of the standard field sobriety tests, on Plaintiff, and claims that based on his education, training and experience, he observed clues that indicated intoxication or

_____

[2] Officer Ortega's report also states that he asked for Plaintiff's license and vehicle registration, but the video shows only that he asked her for the rental agreement after Plaintiff told him she was driving a rental car. At any rate, Plaintiff produced the requested information, and the Court finds that it is immaterial whether Plaintiff understood that the officer would want certain identifying information and provided this on her own, or whether it was verbally requested by Defendant.

impairment. Plaintiff disputes this statement, claiming that Defendant's administration of the test was faulty and did not provide reliable results which could provide a basis for probable cause to arrest Plaintiff. Plaintiff does not dispute that Defendant received training regarding the proper means of administering the HGN test according to the National Highway Traffic Safety Administration Manual ("NHTSA Manual"), *see* Doc. 87-10, but she points to numerous ways Officer Ortega conducted the tests contrary to that training which were departures from the normal procedures set forth in the NHTSA Manual for the proper administration of the HGN with other evidence and testimony. *See* Pltff's Rsp. To Deft's Fact 7.[3]

Defendant Ortega claims that when he was performing the HGN test, about 12-15 inches from Plaintiff, he could detect a strong odor of alcohol and he observed that her eyes were blood shot and watery.

Officer Ortega then asked Plaintiff to perform a standard field sobriety test of standing on one leg. Plaintiff informed Defendant that she had a right knee injury. Officer Ortega then told Plaintiff she could stand on her left leg instead and she responded that she was physically unable to perform the one-legged stand. Defendant asked if she had trouble walking, to which Plaintiff replied she did not. Officer Ortega then asked Plaintiff to perform another field sobriety test by walking heel-to-toe, demonstrating the test for Plaintiff. However, even though Plaintiff had just told Defendant that she had no trouble walking, she stated that she could not perform the heel-to-toe test, claiming that she had "mobility" issues. Plaintiff admits that she is not disabled and has not been told by a healthcare provider that she is disabled.

---

[3] The Court will continue its discussion of Officer Ortega's administration of the HGT in the discussion on reasonable suspicion, below.

Defendant Ortega decided not to administer either the one-legged stand or walking test and instead gave Plaintiff an alternate test of touching her fingers to her thumb and counting to four backwards and forwards. Plaintiff initially performed the test contrary to Officer Ortega's demonstration, but after Officer Ortega demonstrated the test a second time, Plaintiff successfully completed the test. Plaintiff claims that Defendant failed to offer clear instructions the first time he demonstrated the test but successfully completed the test once the instructions were clear to her.[4]

Officer Ortega gave Plaintiff another alternate test of reciting a portion of the alphabet, from "C" to "G," which Plaintiff was able to do without a problem. After completing the second alternate field sobriety test, Officer Ortega asked Plaintiff how much she had to drink, and Plaintiff responded she had a glass of wine in Pueblo. When Officer Ortega asked her if that was all she had consumed, she nodded her head indicating yes, that was all she had drunk. Officer Ortega told Plaintiff that he was detaining her because she was under the influence of alcohol, and that he believed she was impaired while operating a motor vehicle. Officer Ortega believed it was appropriate to ask Plaintiff to breathe into a portable breathalyzer, ("PBT") and radioed to have such a unit brought to the scene. A PBT unit was obtained. Sergeant Schake arrived on scene, and both Officer Ortega and Sergeant Schake had to explain the reason for the PBT to Plaintiff several times before she eventually agreed to take the test. Plaintiff tried three times to blow into

---

[4] Defendant did not count it against Plaintiff when she was unable to successfully complete the finger-touching test. The video recording shows that Plaintiff stopped the exercise after completing it once, when Officer Ortega had demonstrated the test by doing the exercise several times over. Officer Ortega never actually told Plaintiff how many times to do the exercise, or that she should not stop until he told her to stop. Based on the Court's observations of this test from the recording, Plaintiff's decision to do the exercise just once would have been a normal and very common reaction for any person taking the test.

the machine, but the attempts were unsuccessful. Plaintiff adds that she was concerned about her legal rights, since Defendant falsely informed her that she would be charged with aggravated DWI if she refused to submit to the PBT.[5]

In his deposition, Defendant Ortega stated that in his experience, individuals who try to blow air into the portable breathalyzer but who are unsuccessful in their attempts, are deliberately trying to fail the test. Plaintiff disputes this because other than Defendant offers no actual evidence during the investigation that Plaintiff was attempting deliberately to fail the test.

At the police station, following Plaintiff's arrest, Plaintiff refused to blow into the intoxilyzer. Sgt. Shake stated that when he conducted a subsequent inventory of Plaintiff's car, he found an open container with a residue of alcohol—a glass that appeared to have wine in it with the odor of alcohol. Plaintiff does not deny that a blue collector's glass was removed from her vehicle long after her arrest and during the inventory process, but denies that there was any container with a residue of alcohol in her vehicle at the time of the arrest. The charges against Plaintiff were eventually dismissed.

## II.    Legal Standard

Defendants have asserted the defense of qualified immunity, which shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009); *Romero v. Story,* 672 F.3d 880 (10th Cir. 2012).

---

[5] Plaintiff refers to "Additional Excerpts of Ortega Dep." in citing Defendant's deposition statements where Defendant acknowledges that New Mexico law does not permit an officer to charge someone with aggravated DWI if they refuse to take the PBT. However, the Court is unable to find these "Additional Excerpts" attached to any of the pleadings in either cross-motion for summary judgment, although they are included in the brief itself. Doc. 95 at 7.

Once a defendant asserts a defense of qualified immunity, the burden shifts to the plaintiff to show that the law and facts at issue establish that qualified immunity does not apply. *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir. 1994). The plaintiff must come forward with sufficient evidence to show that the defendant violated a constitutional or statutory right, and that the right was clearly established at the time of the conduct such that it would be sufficiently clear to a reasonable official that his conduct violates that right. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). The essential inquiry is whether an objectively reasonable official would have known that his conduct was unlawful. *Lawrence v. Reed*, 406 F.3d 1224, 1230 (10th Cir. 2005). The Court may consider these two inquiries in any order. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

Both parties have moved for summary judgment and the Court addresses both cross-motions here. A motion for summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). To avoid summary judgment, a party must produce specific facts showing that "there remains a genuine issue for trial and evidence significantly probative as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co*., 853 F.2d 768, 771-72 (10th Cir. 1988) (quotation marks and citations omitted); *see York v. AT&T*, 95 F.3d 948, 955 (10th Cir. 1996) ("[m]ere assertions and conjecture are not enough to survive summary judgment").

The fact that both parties have moved for summary judgment does not permit the entry of a summary judgment if disputes remain as to material facts. *See Buell Cabinet Co. v. Sudduth,* 608 F.2d 431, 433 (10th Cir.1979). Cross-motions for summary judgments, however, do authorize a court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties. *See Harrison W. Corp. v. Gulf Oil Co.,* 662 F.2d 690, 692 (10th Cir.1981) (citations omitted).

### DISCUSSION

Defendant contends that he is entitled to qualified immunity because based on the undisputed facts of the case, he did not violate Plaintiff's Fourth Amendment rights. Plaintiff admits to speeding and does not contest the legality of the traffic stop, but she contends that Officer Ortega violated her constitutional rights when he expanded the stop to conduct a DWI investigation. She claims that Defendant Ortega subjected her to field sobriety tests even though an objectively reasonable officer would know she was not under the influence of alcohol and he also arrested her following her performance of those tests without probable cause. The Court's analysis therefore will begin with the question of whether Defendant had reasonable suspicion to justify the expansion of the traffic stop into a DWI investigation.

In a qualified immunity analysis, the Court may consider the two prongs in any order, *see Pearson v. Callahan,* 555 U.S. at 236, but the analysis here lends itself here to first conduct an examination of the facts in the context of the clearly established law before considering whether the evidence shows that Defendant violated Plaintiff's constitutional rights.

I.      **Whether Defendant is Entitled to Qualified Immunity in Plaintiff's Detention**

The Fourth Amendment protects people against unreasonable seizures of "their persons, houses, papers, and effects." *Soldal v. Cook County*, 113 S. Ct. 538, 544 (1992). The law requires that traffic stops must be based upon reasonable suspicion, and must also be limited in both scope and duration. *Florida v. Royer*, 460 U.S. 491, 500 (1983). Traffic stops "must be temporary and last no longer than is necessary to effectuate the purposes of the stop," *United States v. Sandoval*, 29 F.3d 537, 539 (10th Cir.1994)(quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)), and must be "reasonably related in scope to the circumstances which justified the initial stop." *United States v. Williams*, 403 F.3d 1203, 1206 (10th Cir. 2005). Courts use a "totality of the circumstances" of each case to see whether a detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *U.S. v. Arvizu,* 534 U.S. 266, 273 (2002). At each step of a detention, an officer must have "specific articulable facts" in order to extend a detention in time or scope which "support a rational inference of criminal activity." *See U.S. v. Williams*, 403 F.3d 1203, 1207 (10th Cir.2005).

A law enforcement officer is entitled to qualified immunity if the "infringed right at issue was clearly established at the time of the allegedly unlawful activity such that a reasonable law enforcement officer would have known that his or her challenged conduct was illegal." *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) (quoting *Martinez v. Carr*, 479 F.3d 1292, 1294-95 (10th Cir. 2007). Defendant contends that the law relevant to reasonable suspicion and probable cause applicable to these facts were clearly established at the time, but that Officer Ortega's conduct was objectively reasonable and comported with this law. Officer Ortega defends his conduct as legal by insisting that even if he was mistaken about the existence of reasonable suspicion or probable cause, his

conduct was objectively reasonable under the clearly established law. *See Cortez v. McCauley,* 478 F.3d 1108, 1120 (10th Cir. 2007) ("[e]ven law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity").

Plaintiff contends that Officer Ortega expanded the scope of the stop after he should have seen that she was not visibly impaired, but the Court disagrees, and finds that when considering all the circumstances of the case and after reviewing the videotape of the stop and arrest, Defendant had reasonable suspicion to expand the stop and conduct a DWI investigation:

- Plaintiff was driving 26 miles over speed limit in construction zone and appeared to be unaware that she was in a construction zone; however, the video shows both sides of the lane where Plaintiff was stopped to be lined with orange barrels and flashing lights. Defendant Ortega could reasonably believe Plaintiff was at least a distracted driver;

- Officer Ortega observed Plaintiff insert two pieces of gum in her mouth;[6]

- Officer Ortega detected a strong odor of alcohol in the vehicle and noted that Plaintiff's eyes were bloodshot, although Plaintiff told him she had had nothing to drink.

While the timeline of Plaintiff's travels was not made part of the parties' statement of facts, an overview of these facts is helpful for context. Plaintiff stated that she left Denver about

---

[6] Although not mentioned in Defendant's statements of facts, Plaintiff does not dispute that she put gum in her mouth at that time, and the video recording shows Plaintiff chewing gum before the HGN test and Officer Ortega instructing her to discard the gum. Ex. 5, Video 1 at 10:31. Defendant also includes here as a basis for reasonable suspicion the fact that Officer Ortega had to knock on the passenger window to get Plaintiff's attention, but the Court finds this fact immaterial, since Plaintiff was driving a rental car with which she was possibly unfamiliar, and Officer Ortega was aware she was driving a rental car within the first few minutes of the stop.

2:00 p.m. and then stopped in Pueblo around 3:30 or 4:00, then continued on to Santa Fe where she again stopped for dinner around 8:00. *See* Doc. 87-1 at 45, 50-52; Doc. 97-1 at 2.[7]

Plaintiff denies that she smelled of alcohol, but her own testimony supports this statement in Officer Ortega's report. Plaintiff initially told Officer Ortega that she had no alcohol. However, in response to his question after completing the alphabet test, the video shows Plaintiff admitting to having a glass of wine in Pueblo, *see* Ex. 5, Video 1 at 10:38, and then a few minutes later after being asked to take the PBT, she admitted to having yet another glass of wine with dinner when she stopped in Santa Fe, *see* Video 1 at 10:44; *see also* Doc. 87-1 at 45 (admission of drinking in Pueblo) and Doc. 87-1 at 50-52 (admission of drinking in Santa Fe). Plaintiff had twice misrepresented the amount of wine she had during her trip: once when she initially denied drinking, and then later when she admitted to having a glass of wine in Santa Fe without advising Defendant she had also had another glass of wine in Pueblo. Plaintiff's own expert, Lou Golson, testified at his deposition that a driver who had consumed "only *one* glass of wine" an hour and a half earlier would "probably not" have an odor of alcohol. Doc. 95-2 (Golson Dep.) at 106-107 (emphasis added).

Plaintiff eventually admitted to having one glass of wine in Pueblo and another glass in Santa Fe with dinner. Given her initial statement to Officer Ortega that she had nothing at all to drink on her way from Denver to Albuquerque, it would be difficult to determine exactly how much Plaintiff had to drink that evening. At any rate, Plaintiff's own admissions support the fact that Officer Ortega would have smelled alcohol when he

---

[7] This is somewhat inconsistent with Plaintiff's statement to Officer Ortega that she believed her last drink to be around 7 p.m., but this inconsistency is not material. Ex. 5, Video 1, 10:45.

stopped Plaintiff, and thus, Plaintiff's dispute about the smell of alcohol cannot be considered material since this "dispute" is controverted by her own testimony.

Under Tenth Circuit law, an admission to drinking is sufficient to give reasonable suspicion to conduct field sobriety tests. *Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1207 (10th Cir. 2008) (admission by plaintiff that he had "one beer three hours ago" gave the officer reasonable suspicion to conduct the field sobriety tests—or, at the very least, the arguable reasonable suspicion entitling the officer to qualified immunity). The court's conclusion in *Vondrak* rested in large part on the New Mexico statute that proscribes driving while impaired to the slightest degree and criminalizes a condition less than intoxication. *See* N.M.S.A. §66-8-102(A) ("It is unlawful for a person who is under the influence of intoxicating liquor to drive a vehicle within this state").

In this case, it is not entirely clear whether Plaintiff admitted to drinking prior to exiting her vehicle. However, even when viewing the facts favorably to Plaintiff and assuming that Plaintiff continued to deny having had any alcohol before exiting the vehicle, there was still reasonable suspicion to continue the detention given Officer Ortega's observations when he effected the traffic stop:

- Plaintiff's apparent unawareness of her surroundings when driving through what appears to be a very obvious construction zone;

- inserting sticks of gum in her mouth when Defendant approached her; and

- the smell alcohol when Officer Ortega engaged in conversation with Plaintiff through the open passenger window.

The Court finds that it would not be apparent to Officer Ortega as a reasonable officer that detaining Plaintiff to investigate a DWI would violate her constitutional rights under the

circumstances here, and so in the very least, Defendant is entitled to qualified immunity on the detention. *See U.S. v. Hunnicutt,* 135 F.3d 1345, 1348 (10th Cir. 1998) (detention must be reasonably related in scope to the circumstances which justified the interference in the first place).

Plaintiff makes much of certain inconsistencies in Defendant Ortega's statements in his affidavit and various deposition statements. *See* Doc. 87-11 (Ortega Aff.) For example, in his affidavit, Defendant stated that Plaintiff admitted to drinking while still in her vehicle; that she admitted to drinking one glass of wine with dinner in Pueblo, Colorado and that she later stated she had a glass of wine with dinner in Santa Fe approximately 7:00 pm.  Doc. 87-11, ¶14. However, in his deposition, Officer Ortega admitted that Plaintiff initially denied drinking, but that before exiting her car, she "nonverbally" admitted that she had in fact had something to drink before exiting the car by shrugging her shoulders.  See Doc. 87-10 (Ortega Dep.) at 23. The Court agrees with Plaintiff that the video shows that neither of these scenarios occurred.  In the video, Plaintiff denies having anything to drink in response to Defendant's initial question, but there is nothing audible in response to his asking the same question a second time.  The Court was not able to see any visible shrug of any sort on Plaintiff's part when asked the question a second time, just before Officer Ortega asked Plaintiff to exit her vehicle.  Thus, there is nothing to show that Plaintiff admitted to drinking before she was asked to exit the vehicle except for Defendant's claim of a "nonverbal" admission.   Plaintiff's undisputed admissions about having a drink in Pueblo and in Santa occurred after Plaintiff had exited the vehicle after being administered the field sobriety tests, and each admission occurred separately—about 6 minutes from each other.  There are other inconsistencies in Officer Ortega's statements as well, such as his affidavit statements that Plaintiff handed him a credit card instead of her license,

which also does not appear to be borne out by the video). However, these inconsistencies raised by Plaintiff are insufficient to create any factual disputes because, as the Court just concluded, Officer Ortega had reasonable suspicion to detain Plaintiff viewing all these "facts" favorably to Plaintiff.

## II.     Whether Defendant is Entitled to Qualified Immunity in Plaintiff's Arrest

At the time of the underlying events which make up Plaintiff's complaint, it was clearly established that a warrantless arrest is permissible under the Fourth Amendment if there is probable cause to believe that a crime is being committed. Thus, under the Fourth Amendment, Officer Ortega was permitted to arrest Plaintiff without a warrant if he had probable cause to believe that Plaintiff was committing a crime. *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir.1995).  Probable cause exists "where a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (emphasis original).  Probable cause is measured against an objective standard of reasonableness and may rest on the collective knowledge of all officers involved in an investigation rather solely on the knowledge of the officer who made the arrest." *U.S. v. Zamudio-Carrillo,* 499 F.3d 1206, 1209 (10th Cir. 2007).

Based on this clearly established law, a law enforcement officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff."    *Cortez v. McCauley*, 478 F.3d 1108 at1120. In determining whether probable cause to arrest exists, courts evaluate the circumstances "as

they would have appeared to prudent, cautious and trained police officers." *U.S. v. Davis*, 197 F.3d 1048, 1051 (10th Cir.1999) (quotation omitted).

Plaintiff argues that even if Defendant Ortega had reasonable suspicion to detain Plaintiff, something further is needed to establish probable cause for arrest.

After conducting the field sobriety tests, Officer Ortega explained to Plaintiff that he believed she was "impaired" under the DWI statute. Ex. 5, Video 1, 10:41 and 10:44. He told her that he had 5 "clues" from the HGN test and was giving her the benefit of the doubt that she had mobility problems and so overlooked in her inability to perform the other two SFST (the one-legged test and the heel-to-toe test).[8] Defendant acknowledged that Plaintiff was able to do the two alternate tests, but he stated that based on the results of the HGN along with the smell of alcohol which he continued to notice while in close proximity with Plaintiff administering the test, he believed she was impaired and that the PBT results would determine whether he would have her car towed and drive her to a hotel or arrest her for DWI. Officer Ortega noted there were a limited number of tests he could administer under the statute, and that if she agreed to blow into the PBT machine and came up "zero," then she could drive away. Plaintiff was unhappy with only those two choices, and appeared not to be able to make a decision about whether or not to take the PBT. During this period of time when Officer Ortega was waiting to have a PBT unit brought to the scene, Plaintiff kept asking Officer Ortega about her legal rights and whether she should call a lawyer; and she asked how long the effects of a drink last and advised Defendant that the test would probably show positive results because she did have

---

[8] Defendant actually reports four clues—not five—in his report—a discrepancy which the Court finds immaterial. *See* Doc. 87-3 at 2 and 11.

a drink.  *See* Ex. 5, Video 1, 10:44-10:54.   Plaintiff eventually agreed to take the PBT, but was unable to blow sufficiently to give a usable sample.

Plaintiff contends that the HGN test was administered improperly and contrary to the training Officer Ortega received and so cannot provide a basis for probable cause.  She also contends that there is no evidence that she was trying to manipulate the PBT, and so her inability to perform the test cannot be used as a basis for probable cause.

A.    HGN Test

Plaintiff raises various objections to the way Officer Ortega administered the HGN test which affected its validity:

- the positioning of Plaintiff toward relatively fast-moving traffic so that the traffic in the background coincides with a stimulus which in itself can cause nystagmus;

- failure to provide proper instructions for the test;

- moving the stimulus at an improper level from Plaintiff's eye level; and

- having Plaintiff perform the test with her glasses and then attempting to repeat the test without her glasses.

Plaintiff notes that Officer Ortega stated to Sgt. Shake that there were no positive results from the field sobriety tests other than the HGN.  *See* Ex. 5, Video 1 at 15:02 ("I don't have nothing [sic] else other than the HGN.").   Plaintiff therefore argues that the HGN results do not provide a basis for probable cause to arrest her because they were not administered according to the NHTSA Manual. Defendant counters that violations of training policies such as the NHTSA manual cannot provide a basis for Fourth Amendment claims, and this is an accurate statement under Tenth Circuit precedent. *Tanburg v. Sholtis,* 401 F.3d 1151, 1163-64 (10th Cir. 1005).   Plaintiff contends that the

NHTSA Manual is not a policy or standard operating procedure, but a set of empirically based methods for detecting impairments in motorists. However, the real issue is whether Defendant had probable cause to arrest Plaintiff based on the results of the field sobriety tests, not whether Defendant failed to adhere to NHTSA instructions or policy. The Court acknowledges that in theory, it is possible for the test to be given in such an unreliable and inconsistent manner so as to render the results invalid and not provide a reasonable basis for a finding of probable cause. With that in mind, the inquiry turns to an examination of the HGN test administered by Officer Ortega, based not only on the pleadings but on the Court's review of the video tapes.

### 1. Position of Plaintiff During HGN Test

Plaintiff contends that Officer Ortega placed Plaintiff in position where she was facing passing traffic, which could result in unreliable results if the lights from passing traffic caused nystagmus. In his deposition, Sgt. Shake stated that he viewed the video of Officer Ortega administering the HGN test. He stated that Plaintiff was facing traffic that was moving at least 55 miles an hour and that it was "not the optimal position to be performing the horizontal gaze nystagmus." Doc. 87-2 at 43-44. Lou Golson, Plaintiff's expert, states in his report that Plaintiff was "improperly positioned for the HGN" and that because the test was given improperly "according to NHTSA standards, "any clues obtained from the test would be considered invalid." Doc. 87-6 at 5; Doc. 87-7 at 4.

Ron Martinelli, defense expert, stated in his deposition that the NHTSA manual advises that the individual taking the test not be in "close proximity" to "rapidly moving traffic" and that the video recording shows that there were periods of time during the HGN test when there was no traffic whatsoever passing in front of Plaintiff. Doc. 98-2 at 49.

The video recording shows that both Plaintiff and Defendant were situated on the shoulder of the highway lane, which arguably can be considered in "close proximity," but also corroborates Mr. Martinelli's observation that there were significant periods of time during the HGN testing when no traffic was passing in front of Plaintiff. Mr. Martinelli also stated that the NHTSA simply offered a protocol and contained no "mandates or requirements" which officers must follow, since "every encounter between an officer and a suspected [DWI] person is unique . . . ." Doc. 98-2 at 59:18-20; 60:16-25.[9]

This evidence deserves a closer look with reference to the very manual Plaintiff relies on. The NHTSA Manual states in relevant part:

> Examples of optokinetic nystagmus include watching strobe lights, rotating lights, or rapidly moving traffic in close proximity. **The Horizontal Gaze Nystagmus test will not be influenced by optokinetic nystagmus when administered properly**. During the Horizontal Gaze Nystagmus test, the suspect is required to fixate the eyes on a penlight, pencil or similar object that moves in accordance with the HGN testing procedures, thus optokinetic nystagmus will not occur. The movement of the stimulus and the fixation on the stimulus by the subject precludes this form of nystagmus from being observed by the officer.

In the plain language of the manual, then, a properly administered test would *not* be influenced by placing an individual in front of passing traffic *when administered properly,* even where a position is not "optimal" for the test (as Sgt. Shake testified). This means that positioning an individual to face rapidly moving traffic during an HGN test would not affect a properly administered test. The relevant inquiry now becomes whether Officer Ortega performed in such a way as to reasonably believe the test results were valid.

### 2. *Clues in Different Eyes*

---

[9] Mr. Martinelli's proposed expert testimony is the subject of a *Daubert* motion by Plaintiff, *see* Doc. 89, but Plaintiff does not challenge Mr. Martinelli's deposition testimony used by Defendant for summary judgment purposes. See Doc. 91-5.

Officer Ortega noted four clues resulting from the HGN test, three clues in the right eye and one in the left:

- I observed lack of smooth pursuit in both eyes.
- I observed distinct and sustained nystagmus in her right eye at a maximum deviation.
- I observed onset of nystagmus prior to a [sic] 45 degrees in right eye.

Doc. 87-3 at 11. Mr. Golson testified in his deposition that getting different results for each eye is indicative of "some sort of affliction in one eye or a possible traumatic brain injury." *See* Doc. 87-6 (Golson Rep't) at 3. Mr. Martinelli, on the other hand, stated that he had seen a person with alcoholic-induced nystagmus in one eye and not the other, but that this could occur when the person is distracted or intentionally distracting the administration of the test in order to thwart the officer's attempt to get a response from that eye. Doc. 91-5 at 52:20-25 to 53:1-8. He considered Plaintiff's actions in the videotape to be an example of such distractions, for example when Plaintiff physically moved her hands to direct Officer Ortega's hands to where she wanted him to hold the pen light. Doc. 91-5 at 3:1-17. She also interrupted the test to ask Officer Ortega if she could put on her glasses. *See* Ex. 5, Video at 10:31 ("jeez, I've got to put my glasses on").

Interestingly, the NHTSA Manual states that Step 1 in giving the HGN test is to instruct the subject to remove eyeglasses, if worn, since "[i]t does not matter whether the subject can see the stimulus with perfect clarity, as long as subject can see it at all." Doc. 87-8 at 45. In this instance, Plaintiff did not have any glasses on, was allowed to put them on at her request, and then was asked to take them off when it was discovered that they were reading glasses. Ex. 5, Video at 10:32. Mr. Martinelli considered these actions by Plaintiff to be either "an intentional attempt to "thwart" the test or a behavioral clue that

the person cannot follow directions because he or she was under the influence of alcohol. Doc. 91-5 at 6:8-21.

Despite Mr. Golson's opinion regarding one-eyed results, there is no guidance from the NHTSA Manual, on which his opinion relies. The manual directs that right and left eyes are checked together and separately, but does not mention—much less attach any significance to—different results for different eyes. In fact, the manual states that "[i]t is possible that all three clues definitely will be found in one eye, while only two (or sometimes only one) will show up in the other eye." Doc. 87-8 at 49 (NHTSA Manual, page 25 of 62) (indicating that the maximum number of clues possible for "each eye" is 3 and the total maximum number of clues for "both eyes" is 6); *see also* Doc. 87 at 43 (discussing three "clues" in HGN testing).

### 3. Other Claimed "Errors" in HGN Testing

Plaintiff contends that Officer Ortega made other testing errors which went against his training and the procedures set out in the NHTSA Manual which also invalidated the clues that he obtained. Mr. Golson opined that he moved the stimulus (the pen light) too quickly and in an arcing motion, instead of holding it 10-12 inches from the eyes and slightly above eye level. The Court reviewed this portion of the video tape at least three times, and it appears that Officer Ortega held the stimulus at the proper distance and height from Plaintiff's eyes, and moved it along a straight and smooth manner. Any deviation was not apparent and, moreover, any deviation to such a slight degree would be immaterial to the reasonableness standards necessary in a Fourth Amendment analysis.

On the video tape, Officer Ortega can be seen and heard giving explicit directions to Plaintiff prior to giving the HGN test. He exhibited consistence and patience with

Plaintiff, even when he had to repeatedly tell her to not move her head and follow the pen light with her eyes only.  Ex. 5, Video 1 at 10:31.  For the above reasons, the Court finds that Officer Ortega administered the HGN giving clear instructions prior to the test, in a manner in which a reasonable officer could believe the test results would be valid and reliable and consistent with Plaintiff's Fourth Amendment rights.

       B.      <u>PBT</u>

      As mentioned above, Plaintiff was extremely resistant to taking the PBT, and this is evident from the audio portion of the video recording.  Both officers had to explain several times how the PBT worked. Plaintiff finally agreed to take the test. In the recording, Plaintiff can be heard trying to blow into the device with both officers repeatedly telling her to "blow harder" or "blow until it clicks."  Ex. 5, Video 1, 10:60. Plaintiff was given at least three chances to blow sufficiently to register on the device, but without any success.[10]

      Officer Ortega claims that his training and experience told him that that individuals who unsuccessfully blow into the portable breathalyzer units are deliberately trying to fail test so that an adequate sample cannot be taken, but Plaintiff contends there is no evidence to support this.  The question, though, is not whether there is actual *evidence* that Plaintiff was trying to "fool" the machine, but rather whether the conclusion reached by Officer Ortega decision regarding Plaintiff's conduct was one a reasonable officer would make.

---

[10]  Plaintiff was advised by another officer on the scene that Officer Ortega already had sufficient probable cause to arrest her for DWI, which conflicted with what Officer Ortega told her.  The Court assumes the other officer (who can only be heard but not seen on the recording) was Officer Schake, who brought the PBT unit over.  This conflicting information is immaterial to the issue being addressed here—which is whether Defendant had probable cause to arrest her after all the tests were administered.  Officer Schake is not a defendant in this case and further, would not have been aware of the information provided to Plaintiff by Officer Ortega before he arrived on the scene.

Plaintiff relies on *Wilder v. Turner,* a Tenth Circuit case in which the court found that minor indicia such as smell of alcohol, watery eyes, flushed face, slow and deliberate speech and slow hand movements are sufficient for reasonable suspicion to investigate a DWI but not for probable cause to arrest. 490 F.3d 810, 815 (10th Cir. 2007). The court concluded that probable cause developed when the plaintiff in that case refused to participate in the field sobriety test. Plaintiff argues that because Plaintiff here did participate in the field sobriety tests, the probable cause which existed in *Wilder* did not occur here. *Wilder* does not help Plaintiff's position. As Defendant points out, Plaintiff did participate in some of the field sobriety tests, one of which had positive results that would support probable cause—although for a different reason from the one that supported probable cause in the *Wilder* case. Also, Plaintiff agreed to take the PBT but her actions while taking the test led Defendant to conclude that she was trying to manipulate the results.

Plaintiff also relies on another Tenth Circuit case, *Linin v. Neff,* 2017 WL 3972982 at *9. In that case, the court found that the odor of alcohol and plaintiff's watery and glassy eyes did not give rise to probable cause. The *Linin* plaintiff did not admit to drinking and blew a 0.00 breath test—which is quite different from the situation here where Officer Ortega was unable to get any sort of PBT reading from Plaintiff and as a result was unable to determine whether she was merely impaired (in which case she could be driven to a hotel) or intoxicated (in which case she would be arrested). In addition, her attempts to blow into the device led him to believe she was deliberately trying to "fool" the machine by getting an insufficient breath sample and that such behavior indicated that

she was a person "under the influence." Doc. 87-11, ¶26. *Linin* does not support Plaintiff's position, either.

In the context of a claim made under § 1983 that a warrantless arrest violated the Fourth Amendment, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest. *See Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1191 (10th Cir. 2007). It is well established that "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (citation omitted). Thus, in order to overcome a defense of qualified immunity, a plaintiff must demonstrate that it would be readily apparent to any reasonable officer that, under clearly established law, he had no basis to effect an arrest under the circumstances. *See Koch v. City of Del City*, 660 F.3d 1228, 1241 (10th Cir. 2011). The relevant question, therefore, is *not* whether Plaintiff was actually trying to manipulate the test results, but whether Officer Ortega was reasonable in his belief that she was doing so.

The recording is useful here yet again, and it convinces the Court that Officer Ortega, a law enforcement officer with experience and training in the administration of the PBT, could reasonably believe that Plaintiff was deliberately trying to interfere with giving a sufficient breath sample. Defendant is therefore entitled to qualified immunity as to the legality of the arrest because his actions and conclusions, based on the results of both the HGN test and the PBT, were objectively reasonable and a reasonable officer in his position could have believed that probable cause existed to make the arrest.

## III.    Whether Defendant Violated Plaintiff's Fourth Amendment Rights[11]

Having found that Officer Ortega is entitled to qualified immunity for both the detention and the arrest, there is no reason to proceed to an analysis of whether Plaintiff has shown that her Fourth Amendment rights were violated by Defendant's' conduct. The Court continues with the analysis as an alternative finding.  Because a Fourth Amendment analysis is driven by the totality of circumstances and the reasonableness of an officer's conduct, the Court would find in favor of Defendant on this inquiry as well.

### A.    Reasonable Suspicion for Detention

Based on all the facts of record which have been described in detail, no reasonable juror would find that Officer Ortega's detention of Plaintiff to perform a DWI investigation was illegal.  Defendant smelled alcohol through the passenger window of the car Plaintiff was driving and based on Plaintiff's own testimony (which twice misrepresented the amount of alcohol she ultimately claimed was consumed), there is no evidence to refute this evidence.  Plaintiff was driving over 26 miles per hour through a construction zone without being aware of these surroundings, and Officer Ortega saw Plaintiff insert sticks of gum in her mouth when he initially stopped her. Plaintiff offers no evidence to dispute any of these facts, while Defendant's facts clearly refute those offered by Plaintiff to support its position that Officer Ortega had no basis for reasonable suspicion.

### B.    Probable Cause for Arrest

---

[11] The Court acknowledges the distinction between the "objective reasonableness" relative to officer's understanding of the clearly established law, as opposed to the "reasonableness" of that offer's conduct.  For the discussion in this section, the Court focuses on the latter inquiry.  *Cmp. Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1254-55 (10th Cir. 2013) (citing *Saucier v. Katz*, 533 U.S. 194, 204 (2001) (noting that in the context of excessive force, the inquiries for qualified immunity and the substantive inquiry remain distinct).

The main thrust of Plaintiff's argument is that there was no probable cause for arrest because Officer Ortega gave the tests in such a way as to render the HGN results invalid. Plaintiff's expert (Lou Golson) opined that Defendant administered the test in such a way as to render the results invalid, while Defendant's expert (Ron Martinelli) explained some of the allegedly unorthodox results by describing Plaintiff's behavior as intentionally obstructive to Defendant's administration of the test. The Court has already concluded that irregularities claimed by Mr. Golson are simply not evident from the recording. What is also evident from the recording is that Officer Ortega acted reasonably in his administration of the test and in his arrest of Plaintiff based on the results of the test. Thus, any disagreements between the two experts are insufficient to create a dispute of fact favoring Plaintiff's position.

As to the PBT, the parties "dispute" whether or not Plaintiff was in fact trying to manipulate the results of the test by intentionally giving an insufficient breath sample. In the recording, one can hear Plaintiff repeatedly claiming she's trying to blow into the device while the two officers on scene (Officer Ortega and Sgt. Shake) are just as repeatedly trying to get her to blow longer and harder. Defendant Ortega recalls that portion of the event this way:

> Q.    Did the fact that [Plaintiff] tried on three separate occasions to blow in the portable breath test, and in those three separate occasions was unable to give a breath sample on the portable breath test, did that play a role in your decision to arrest her for DWI?
>
> A.    Yes.
>
> Q.    Okay. Why?
>
> A.    She was just not giving that efficient sample, she would blow, stop, blow, stop. She was trying to manipulate the device by not giving the correct sample for us to get a BAC [blood alcohol concentration].

Q.      Okay.  And why do you say she was trying to manipulate the device?

A.      Because it's a very easy device to blow into.  You take a deep breath and you blow into it.  As long as you're giving that steady breath that it requires, it will . . . click and lock and get your BAC and give you the results of the performance.

Under the Fourth Amendment reasonableness standard, Plaintiff's position is untenable.  While there is no hard evidence that Plaintiff was trying to manipulate the results of the test, no reasonable juror would find that Officer Ortega, from the viewpoint of a reasonable law enforcement officer, could not come to that conclusion based on all the circumstances known to him.

## CONCLUSION

In sum, the Court finds and concludes That Defendant is **entitled to qualified immunity** because based on the undisputed facts of the case and Fourth Amendment law that was clearly established at the time:

- *On the Detention:* It would be apparent to Officer Ortega as a reasonable officer that detaining Plaintiff to investigate a DWI would not violate her constitutional rights under the circumstances here, and so Defendant is entitled to qualified immunity on the detention.   *See U.S. v. Hunnicutt,* 135 F.3d 1345, 1348 (10th Cir. 1998) (detention must be reasonably related in scope to the circumstances which justified the interference in the first place).

- *On the Arrest:* The Court also finds and concludes that Officer Ortega administered the HGN giving clear instructions prior to the test, in a manner in which a reasonable officer could believe the test results would be valid and reliable and consistent with Plaintiff's Fourth Amendment rights. Defendant could also reasonably believe that Plaintiff was deliberately trying to interfere with giving a

sufficient breath sample and that in doing so, his conduct comported with clearly established law. Defendant is therefore entitled to qualified immunity as to the legality of the arrest because his actions and conclusions, based on the results of both the HGN test and the PBT, were objectively reasonable and a reasonable officer in his position could have believed that probable cause existed to make the arrest.

Plaintiff has not presented any dispute of fact:

- suggesting that Officer Ortega did not have reasonable suspicion to continue the stop and detail Plaintiff to conduct a DWI investigation and perform field sobriety tests; or

- suggesting that Officer Ortega did not have probable cause to arrest Plaintiff for driving while impaired.

The Court also finds and concludes that **Plaintiff has not shown any evidence that Defendant violated her Fourth Amendment rights**:

- Defendant has presented evidence disputing Plaintiff's position that there was no reasonable suspicion to continue the detention to investigate a DWI, and that there was no probable cause for her arrest:

- However, Plaintiff has not presented facts refuting those facts that support Defendant's position that Officer Ortega acted reasonably in detaining Plaintiff and in arresting her.

**THEREFORE,**

**IT IS ORDERED** that (1) Plaintiff's Motion for Summary Judgment **(Doc. 87)** is hereby DENIED for reasons described in this Memorandum Opinion and Order; and (2)

Defendant's Motion for Summary Judgment Based on Qualified Immunity (**Doc. 91**) is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

A Rule 58 Judgment shall issue separately.

_____
CHIEF UNITED STATES DISTRICT JUDGE